## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PAUL OWEN HAMILTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-CV-664-TCK-CDL** |
| | ) | |
| **JIMMY MARTIN Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This matter comes before the Court on a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Petitioner Paul Owen Hamilton ("Hamilton") is a prisoner proceeding *pro se*. He is currently in the custody of the Oklahoma Department of Corrections and confined in the North Fork Correctional Center in Sayre, Oklahoma. He challenges his convictions for one count of distribution of child pornography and one count of aggravated possession of child pornography in Tulsa County District Court (Case No. CF-2014-171). For the reasons discussed below, the petition is DENIED.

Hamilton filed the instant Petition for Writ of Habeas Corpus (Dkt. 1) on December 11, 2017, challenging his convictions and sentences as in violation of federal law on the following grounds:

    I.    The evidence was insufficient to support a guilty verdict for distribution of child pornography (Count 1 of the information);

    II.    The evidence was insufficient to support a guilty verdict for aggravated possession of child pornography (Count 2 of the information);

    III.    The trial court misinterpreted the statute for aggravated possession in violation of Hamilton's constitutional rights;

IV.     The trial court handed down an excessive sentence;

V.      Hamilton received ineffective assistance of appellate counsel;

VI.     Hamilton received ineffective assistance of trial counsel;

VII.    The Prosecution failed to disclose exculpatory evidence; and

VIII.   Cumulative fundamental error denied him his constitutional rights.

## PROCEDURAL BACKGROUND

After the jury rendered guilty verdicts on both counts of the information, the trial court sentenced Hamilton to ten (10) years imprisonment and a $15,000 fine on Count 1, and twenty-five (25) years and a $10,000 fine on Count 2, the sentences to run consecutively.  The trial court suspended five years of the ten-year sentence on Count 1.  Dkt. 8-8, pp. 129-36.  With assistance of counsel appointed by the Oklahoma Indigent Defense System ("OIDS"), Hamilton filed a direct appeal to the Oklahoma Criminal Court of Appeals (Dkt. 7-1), raising the following errors:

I.      The evidence was insufficient to prove beyond a reasonable doubt that Hamilton knowingly distributed child pornography;

II.     The evidence was insufficient to prove beyond a reasonable doubt that Hamilton knowingly possessed child pornography;

III.    The trial court misinterpreted Oklahoma's aggravated possession of child pornography statute; and

IV.     The trial court handed down an excessive sentence.

The Oklahoma Criminal Court of Appeals ("OCCA") affirmed on June 1, 2016, finding no merit to Hamilton's four claims.  Dkt. 7-3.

On September 12, 2016, Hamilton filed a *pro se* application for post-conviction relief in the Oklahoma trial court and motions seeking an evidentiary hearing, transcripts at public expense,

additional briefing time, and submission of additional evidence.  Hamilton raised the following

issues in his application for post-conviction relief:

     I.     He received ineffective assistance of counsel in his direct appeal;

     II.     He received ineffective assistance of trial counsel;

     III.     The State failed to disclose exculpatory evidence to the defense;

     IV.     Fundamental error at trial denied him his constitutional rights;

     V.     He is entitled to transcripts at public expense; and

     VI.     He is entitled to an evidentiary hearing.

Dkt. 7-4, p. 3.  The trial court denied Hamilton's application for post-conviction relief on April 26,

2017, finding no merit to his claim of ineffective assistance of appellate counsel.  The trial court

denied grounds II, III, and IV because Hamilton should have raised them on direct appeal.  Thus,

they were procedurally barred by the doctrine of waiver.  Despite the procedural bar, the trial court

discussed the exculpatory evidence claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  The

trial court found no *Brady* violation because although defense counsel was not given a copy of the

compact disc ("CD") with the images alleged to contain child pornography, the images were

available for counsel's review, and thus were not "withheld" within the meaning of *Brady.*  The

trial court further held that Hamilton made no showing that the images were exculpatory.  The trial

court also denied Hamilton's requests for additional transcripts and an evidentiary hearing.  Dkt.

7-4.

     Hamilton filed a *pro se* appeal of the trial court's denial of the application for post-

conviction relief.  Dkt. 7-5.  The OCCA affirmed the denial on June 30, 2017.  Dkt. 7-6.  The

OCCA upheld the trial court's determination that Hamilton had waived claims II, III, and IV by

his failure to raise them on direct appeal.  The OCCA also affirmed the denial of Hamilton's

request for transcripts, finding he had made no showing of need or raised a genuine issue of material fact to support the free transcripts. The Court noted that Hamilton was not entitled to transcripts in order that "he may search the record to find an issue or material fact which might potentially serve as the basis for his claims of ineffective assistance of trial or appellate counsel." *Id.* at 4-5. The OCCA rejected Hamilton's argument that he should have been entitled to file a reply brief as there was no statutory or other authority supporting that claim. The OCCA also found no merit to Hamilton's ineffective assistance of appellate counsel claim. Relying on the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984), the OCCA found that Hamilton had made no showing of either deficient performance or resulting prejudice. The OCCA determined that Hamilton's claims were "conclusory, unprovable, or unspecific claims of ineffective assistance of appellate counsel" that were insufficient to demonstrate ineffective assistance. *Id.* at 6. The OCCA thus affirmed the trial court's denial of Hamilton's application for post-conviction relief in its entirety. *Id.*

## FACTUAL BACKGROUND[1]

A preliminary hearing was held on May 30, 2014, at which it was determined that probable cause existed to hold a trial on the information charging Hamilton with one count of distribution of child pornography (OKLA. STAT. tit. 21, § 1021.2 (2007)) and one count of aggravated possession of child pornography (OKLA. STAT. tit. 21 § 1040.12a (2009)). Dkt. 8-1. A pre-trial motion hearing was held on April 10, 2015. Dkt. 8-2. The trial judge heard argument regarding (1) Oklahoma's aggravated possession of child pornography statute, (2) testimony from the expert, Dr. Sarah Passmore, as to whether the photographs that would be introduced at trial did indeed

---

[1] These facts are summarized from the parts of the transcript submitted with the State of Oklahoma's brief in opposition to the petition for writ of habeas corpus. (Dkt. 8.) Additional relevant facts will be discussed *infra* in the analysis and discussion of the enumerated claims.

depict underage girls, and (3) testimony whether Hamilton was "in custody" during his interview with Sergeant Williams in an unmarked police vehicle.  On the morning of trial, the trial judge ruled that the charge of aggravated possession was correct under Oklahoma law, and that Hamilton was not "in custody" for the interview; he was free to leave.  As a result, the audio recording of the interview was admissible.

At trial, Detective Robert McCoy of the Tulsa Police Department ("TPD") testified at length regarding the procedures by which he discovered the images of child pornography at issue in this case and determined that they had come from Hamilton's computer.  The TPD runs a law enforcement version BitTorrent, a peer-to-peer file-sharing software program, that monitors downloads of known child pornography.  The software identifies the IP address from which the files are shared.  On September 8, 2013, the TPD received downloads to its law enforcement version of BitTorrent with known images of child pornography.  Detective McCoy confirmed the images were known child pornography (a cache of photos known as the Lolita series).  Using the software, Detective McCoy determined the IP address from which the images were downloaded. With that information, McCoy was able to trace the IP address to that of a Cox Communications subscriber.  In answer to a subsequent subpoena, Cox Communications identified the subscriber as Paul Hamilton.  From that information, officers obtained Hamilton's physical address and prepared a search warrant.

Both Detective McCoy and Sergeant Malcolm Williams of the TPD cyber crimes unit executed the search warrant on October 30, 2013.  They seized a desktop computer and several other data storage devices.  Sergeant Williams testified that he interviewed Hamilton inside his unmarked police car.  The interview was recorded.  Hamilton stated that he was the only one to use his computer.

Detective McCoy later performed a forensic examination on the desktop computer seized from Hamilton's apartment and identified 241 images of child pornography stored in "unallocated" space on the hard drive.  Detective McCoy testified that finding the images in unallocated space demonstrated that the images had been downloaded and deleted, a common practice among users of child pornography.  In addition to the images, Detective McCoy found the following search terms:  "teen solo," "cute little teen," and "pedo site."  He also found BitTorrent file fragments with file names of "best six YO preteen showing pussy" and "underage teen models."  On cross-examination, Detective McCoy testified that at the execution of the search warrant he determined that Hamilton's wireless router was password protected and thus not available for use by anyone who did not have the password.  Dr. Sarah Passmore, a specialist in pediatric abuse and neglect, testified as to the ages of the girls depicted in the images on Hamilton's computer.  She testified that she viewed 146 images that she determined were under age 18, and therefore child porn.  The case was submitted to the jury after the close of the State's case.  Hamilton did not testify at trial.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, federal district courts have jurisdiction to hear claims from state prisoners that their convictions were obtained in violation of the United States Constitution.  A petition for writ of habeas corpus will be granted only if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A habeas court will first analyze whether federal law "was clearly established by the Supreme Court at the time of the state court judgment." *Byrd v. Workman*, 645 F.3d 1159, 1165

(10th Cir. 2011). A state court's judgment is "contrary to" federal law where "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Id.* (citing *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004)). An unreasonable application of federal law occurs where the state court identifies the proper controlling legal principle but "unreasonably applies" the law to the facts of the defendant's case. *Id.*

Exhaustion is a threshold issue in a habeas case. Under the federal statute, a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The doctrine serves to avoid a federal court's involvement in overturning a state court conviction before the state has an opportunity to address and correct a constitutional violation. *See Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017). A habeas petitioner must "give state courts a fair opportunity to act on their claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). This requires that a prisoner give the state court "a full opportunity to resolve constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. A prisoner must "fairly present" each claim raised in a petition for writ of habeas corpus to the courts in the state of conviction. State courts are first granted the opportunity to "correct alleged violations" of constitutional magnitude before those claims may be heard in federal court. *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995) (per curiam). The purpose of habeas review is to "guard against extreme malfunctions in the state criminal justice systems" not as "a substitute for ordinary error correction" through appeal in state court. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

## PROCEDURAL DEFAULT

The doctrine of procedural default is an "important corollary" to the doctrine of exhaustion.

*Davila*, 137 S.Ct. at 2064.  Both doctrines serve to advance the interests of comity, finality, and

federalism.  *Id.*

> "Just as in those cases in which a state prisoner fails to exhaust state remedies, a
> habeas petitioner who has failed to meet the State's procedural requirements for
> presenting his federal claims has deprived the state courts of an opportunity to
> address" the merits of "those claims in the first instance."

*Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

Federal courts sitting in habeas will not review federal claims decided by a state court on

procedural grounds "if the decision of that court rests on a state law ground that is independent of

the federal question and adequate to support the judgment."  *Coleman*, 501 U.S. at 729.   In

application, the "independent and adequate state law ground" doctrine bars a federal court from

addressing a prisoner's federal claims on the merits when "the prisoner has failed to meet a state

procedural requirement."  *Id.* at 730.  A state procedural default is "independent" when it relies on

state, not federal law.  *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008) (citing *English v.*

*Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)).   A state procedural default is "adequate" if it is

"firmly established and regularly followed."  *Smith*, 550 F.3d at 1274 (citing *Clayton v. Gibson*,

199 F.3d 1162, 1171 (10th Cir. 1999)).

### A.  Habeas Grounds VI, VII, and VIII of Hamilton's Petition for Writ of Habeas Corpus are Procedurally Defaulted.

Hamilton did not raise Grounds VI (ineffective assistance of trial counsel), VII

(prosecutorial failure to turn over exculpatory evidence), or VIII (cumulative fundamental trial

error) on direct appeal.  In denying Hamilton's application for post-conviction relief, the trial court

denied each of the three claims because Hamilton did not raise them on direct appeal and under

Oklahoma law they were thus "waived."  On appeal of the denial of post-conviction relief, the OCCA affirmed that Hamilton had waived the claims.

A court sitting in habeas will not address claims that were procedurally defaulted in state court on an "independent and adequate" state procedural ground unless the habeas petitioner can demonstrate cause and resulting prejudice for the default or a fundamental miscarriage of justice. *Harmon*, 936 F.3d at 1060 (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)).  In *Smith v. Workman*, the Tenth Circuit determined that a habeas petitioner's waiver of claims not raised on direct appeal is an "independent and adequate" basis for a habeas court to bar review *of any claim except ineffective assistance of trial counsel*.  550 F.3d at 1274 (emphasis added); *see also Cannon v. Gibson*, 259 F.3d 1253, 1267-69 (10th Cir. 2001).  Thus Grounds VII (*Brady* violation) and VIII (cumulative fundamental error) are procedurally defaulted and this Court will not address them on their merits.

Hamilton's ineffective assistance of trial counsel claim, however, requires a more exacting scrutiny to determine whether the state court's finding of procedural default on this claim is based on an "independent and adequate" basis.  In Oklahoma, a criminal defendant is required to raise ineffective assistance of counsel claims on direct appeal.  If the defendant fails to do so, the claims are waived.  *Harmon v. Sharp*, 936 F.3d 1044, 1060 (10th Cir. 2019) (citing *Sporn v. Oklahoma*, 139 P.3d 953, 953-54 (Okla. Crim. App. 2006)).  Federal courts are required to undertake a more thorough "adequacy" analysis when the claim involves ineffective assistance of counsel because of the potential that dismissal of a procedurally defaulted claim could infringe on a defendant's Sixth Amendment right to counsel.  *See Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008); *Fairchild v. Workman*, 579 F.3d 1134, 1142 (10th Cir. 2009) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 378 (1986) ("Because collateral review will frequently be the only means through

which an accused can effectuate the right to counsel, restricting the litigation of some Sixth Amendment Claims to trial and direct review would seriously interfere with an accused right to effective representation."). Thus, claims of ineffective assistance of trial counsel not raised on direct appeal are waived only when (1) trial counsel and appellate counsel are different, and (2) "the ineffectiveness claim can be resolved upon the trial record alone." *English v. Cody*, 146 F.3d , 1257, 1264 (10th Cir. 1998). *See also Harmon*, 936 F.3d at 1061 (citing *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 901 (10th Cir. 2019) (other citations omitted)).

Here, Hamilton retained private defense counsel for trial. His appellate attorney was appointed by the OIDS. Thus, trial and appellate counsel were separate, meeting the first requirement of the adequacy analysis. As to the second requirement, this Court finds that the issues raised can be dealt with on the trial record alone without any additional fact finding. The Court takes each of the sub-claims in turn.

Hamilton contends, first, that trial counsel encouraged him not to testify on his own behalf without a sufficient strategic basis. Under the Fifth Amendment a criminal defendant cannot be compelled to testify against himself. The converse is also true. "Every criminal defendant has the constitutional right to testify at trial and the ultimate decision of whether or not to testify belongs solely to the defendant." *Cannon v. Trammel*, 796 F.3d 1256, 1270 (10th Cir. 2015) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). At the close of the state's case the trial court made a record of Hamilton's waiver of his right to testify:

Court:      You are Paul Owen Hamilton, right?

Hamilton:   Yes.

Court:      And you are the defendant in this case that we've been trying?

Hamilton:   Yes.

| Court: | Okay. And you have a right, a constitutional right to testify in your own behalf. |
|---|---|
| Hamilton: | Yes. |
| Court: | But you're not required to. |
| Hamilton: | I understand. |
| Court: | Have you discussed this with Mr. Henson? |
| Hamilton: | Yes. |
| Court: | And we haven't announced yet whether or not you intend to present evidence, and if you did, it would probably be mostly your testimony if you were going to, right? Have you all made a decision not to have you testify? |
| Hamilton: | I defer to – |
| Counsel: | Your Honor, I spoke with Mr. Hamilton before we went on the record in this matter and we discussed his taking the stand. And I told him it is my professional advice that he not take the stand in this matter. And I explained to him that he had the right to take the stand, he had the right not to take the stand, but ultimately that decision was his. |
| Court: | Right. |
| Counsel: | And subject to the advice that I've given him he's elected to not take the stand in his defense. |
| Court: | Okay. Is that correct? |
| Hamilton: | Correct. |
| Court: | Okay. All right. Now I think we've covered that issue. Thank you, Mr. Hamilton. |
| Hamilton: | Thank you. |

Dkt. 8-5, pp. 109-10. Hamilton stated on the record that his attorney had explained to him his rights, he understood his rights, and chose not to testify. This demonstrates a knowing and voluntary waiver of his rights. Hamilton's own statements on the record belie any post-conviction

assertion that his waiver was not knowing or voluntary.  Thus, the Court finds that the trial record is sufficient to resolve the issue.

Hamilton further contends that his trial counsel was ineffective in failing to raise a *Brady* claim on the basis that the prosecution did not give trial counsel a CD containing the images of child pornography downloaded from Hamilton's computer.  This too was addressed appropriately in the trial court and we can rely on the trial court record in resolving it.  The parties raised this issue before trial and during the jury instruction conference.  Hamilton's counsel was allowed to and did raise objections to each photo produced by the prosecution.  Counsel did not object at trial to the unavailability of the CD, nor did counsel make any argument that the images were not shared by the prosecution.  Again, there is no need to hold an evidentiary hearing on the question whether outside evidence is required to resolve the *Brady* claim.  The trial record is sufficient to demonstrate that no evidence was improperly withheld from the defense.

Hamilton's last defaulted claim was that his trial was fundamentally unfair.  He does not specify any acts of counsel that were potentially deficient.  As a result, there is nothing on which to seek additional evidence.  Particularly because the trial record demonstrates that Hamilton's counsel properly cross-examined witnesses, made appropriate objections, and valid arguments to the jury.  There is no basis for gathering any additional evidence to resolve this vague claim.

Having determined that the procedures afforded to Hamilton in the trial court do not require additional fact finding, the "adequacy" requirement is met.  Accordingly, the state court's procedural bar of Hamilton's ineffective assistance of counsel claim is both independent and adequate to support this Court's finding of procedural default.  Thus, Hamilton's habeas grounds VI, VII, and VIII are procedurally defaulted and will not be considered on the merits.

**B.  <u>Hamilton cannot overcome the procedural bar.</u>**

Having determined that the Oklahoma "waiver" of claims not addressed on direct appeal is both independent and adequate, there is only one other narrow avenue available to Hamilton to pursue review of the merits of his defaulted claims. To overcome the procedural default Hamilton must demonstrate "cause for the default and actual prejudice as a result," *Coleman*, 501 U.S. at 750, or demonstrate that a failure to consider his claims "will result in a fundamental miscarriage of justice." To demonstrate cause, a petitioner must show "an objective factor external to the defense" prevented compliance with the state's procedural rule. This occurs when the failure to comply "cannot fairly be attributed" to the prisoner. *Davila*, 137 S.Ct. at 2065. Cause alone is insufficient, however. A petitioner must also demonstrate prejudice resulting from the default. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

The fundamental miscarriage of justice exception requires a showing of "actual innocence" which the high court defines as a showing "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995). This showing requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324). A showing of "actual innocence" is exceedingly rare and "permits review only in the 'extraordinary' case." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327). The high court has held that actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

Hamilton has put forward no specific factual allegations as cause for the default. Thus, Hamilton has not demonstrated cause for the procedural default or any resulting prejudice, nor has he met the high bar of proving factual innocence required to show a fundamental miscarriage of

justice.  Accordingly, the Court finds Grounds VI, VII, and VIII are procedurally defaulted.  The Court will not address them on their merits.

### DISCUSSION AND ANALYSIS OF THE MERITS OF HAMILTON'S HABEAS CLAIMS

**A.  Habeas Grounds I and II:  Hamilton's convictions for distribution and aggravated possession of child pornography were supported by sufficient evidence.**

Hamilton argues that his conviction for distribution of child pornography was not supported by sufficient evidence because (1) the jury was confused regarding the technology behind IP addresses, wireless routers, and BitTorrent software, (2) the State did not prove that another user in his apartment building could not have accessed his wireless internet, (3) Hamilton assisted police in their investigation, and (4) he was "factually innocent."  Dkt. 1, pp. 12-13.  Regarding aggravated possession of child pornography, Hamilton argues that the State did not prove that he "knowingly" possessed child pornography on his desktop computer because he did not have access or control over the images.

Both of these claims were fully exhausted within the meaning of § 2254 because Hamilton raised them in his direct appeal.  The OCCA determined that there was sufficient evidence to support the convictions, emphasizing the detectives with experience in computer and internet crimes who testified about the receipt and distribution of child pornography from Hamilton's computer.  The detectives determined that Hamilton's wireless internet was password-protected, and thus unavailable to anyone without the password.  The detectives found internet searches on Hamilton's desktop computer that indicated previous searches for child pornography.  And Hamilton's statements to the police admitting searching for and downloading pornography.  The OCCA found this evidence sufficient for "a rational juror" to "conclude, beyond a reasonable doubt, that [Hamilton] knowingly possessed the obscene material and willfully made it available online."  Dkt. 7-3, p. 3.

Under Oklahoma law, a person may be convicted of distribution of child pornography if the State can prove beyond a reasonable doubt that the defendant knowingly distributed any type of child pornography.  Dkt. 8-8, p. 81 (jury instruction 17).  A person may be convicted of aggravated possession of child pornography if the State can prove beyond a reasonable doubt that the defendant knowingly possessed one hundred (100) or more separate materials of child pornography.  Dkt. 8-8, p. 84 (jury instruction 20).

On habeas review, a petitioner is entitled to relief for insufficient evidence if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  A habeas court should not make its determination based on its own evaluation of the evidence, but whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  This inquiry is an objective one, meaning a federal court sitting in habeas may overturn a state court decision rejecting a challenge to the sufficiency of the evidence only where the state court decision was "objectively unreasonable," *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)), or "so insupportable as to fall below the threshold of bare rationality," *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

The *Jackson* standard "respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." *Dockins v. Hines,* 374 F.3d 935, 939 (10th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Much deference is given to the finder(s) of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  In addition to the deference due the trier of fact, the high court notes that the "nature" of a constitutional

sufficiency review by a habeas court is "sharply limited." *Wright v. West*, 505 U.S. 277, 296 (1992). A habeas petitioner claiming insufficient evidence "faces a high hurdle" under the *Jackson* standard. *Patton v. Mullin*, 425 F.3d 788, 796 (10th Cir. 2005). "Where a habeas petitioner's sufficiency of the evidence challenge has already been decided in state court, [the habeas court] employ[s] a more limited review." *Valdez v. Ward*, 219 F.3d 1222, 1237 (10th Cir. 2000).

Evidence was presented at trial that Detective McCoy found child pornography (the Lolita series) had been uploaded from an IP address using Cox Communications. He subpoenaed Cox, and it was determined that the pornography had come from Hamilton's computer IP address. A search warrant was issued and executed on October 30, 2013. Tulsa police seized Hamilton's computer and various storage devices. A forensic search of the computer revealed images of child pornography on the "unallocated" space of Hamilton's hard drive and history of internet searches for child pornography. Evidence was also presented that Hamilton's wireless internet access was password-protected. Finally, Hamilton admitted to Sergeant Williams that he was the only person to use his computer.

In a habeas action, this Court does not evaluate the evidence as a juror would, but determines whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt. In light of the evidence presented to the jury which supported each element of the offense, it was not contrary to Supreme Court law for the OCCA to find the jury's verdict was objectively reasonable. Accordingly, Grounds I and II of Hamilton's petition for writ of habeas corpus are DENIED.

**B. <u>Ground III: The trial court properly interpreted the statutory language regarding aggravated possession of child pornography.</u>**

Hamilton argues in Ground III that the images collected from his computer and loaded onto a CD which was presented as evidence at his trial was only one "material" for purposes of the

16

statute.  As such, he urges that one CD could not rise to the level of "aggravated possession" of child pornography, which requires one hundred (100) or more images.  Hamilton urges that the legislative history of the aggravated possession statute shows that the legislature intended one CD to mean one "material," which would constitute only simple, not aggravated possession of child pornography.

This issue was raised in state court in a pre-trial motion hearing and again during the jury instruction conference.  The trial judge ruled that the legislature clearly intended each image to be one material for purposes of the aggravated-possession statute.  The OCCA on direct appeal agreed with the trial court finding that the legislature intended "material" to include not only storage mediums, but "images, pictures, or depictions" on those mediums.  In footnote 2 of the summary opinion, the OCCA stated:

> Appellant's reliance on *Brown v. State*, 2008 OK CR 3, 177 P.3d 577, is misplaced. Brown was charged with 100 counts of simple possession of child pornography based on images found on several storage devices.  There was no crime of "aggravated possession" at the time.  Based on statutory language relevant to the particular charge (21 O.S. 2001, § 1024.1), we held that the allowable unit of prosecution was each storage medium (e.g. CD or computer drive), rather than each image thereon.  *Brown*, 2008 OK CR 3, ¶ 5, 177 P.3d at 579.  As the parties and the district court observed below, the Legislature appears to have enacted the Aggravated Possession statute in direct response to *Brown*.  In any event, the language of § 1040.12a is quite clear on the subject.

Dkt. 7-3, p. 4, n. 2.

It is also significant the OCCA's holding was based exclusively on Oklahoma law, because "[f]ederal habeas relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  In reviewing a federal habeas petition, the Court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *McGuire*, 502 U.S. at 68; *see also Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000) ("claims of state law violations are not cognizable in a federal habeas action.").

Habeas relief for claims of state-law error are available only when the error "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (other citations omitted); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus").

Hamilton has made no showing that the proper post-*Brown* interpretation of the aggravated possession statute "fatally infected" the trial and denied Hamilton the "fundamental fairness that is the essence of due process." It is apparent that Hamilton disagreed with the OCCA's determination that each image found on his computer was a separate "material" under Oklahoma law. But as the OCCA explained, that interpretation by the trial court was entirely fitting given the addition of the aggravated possession statute adopted by the legislature after the ambiguity in *Brown*. A habeas court does not question a state's interpretation of its own law. "[I]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions." *Estelle*, 502 U.S. at 67-68. Having shown no error of constitutional magnitude, that is the end of the matter for a habeas court. Accordingly, Hamilton's Ground III is DENIED.

### C. <u>Ground IV:  Hamilton's sentence was not excessive.</u>

Hamilton argues in Ground IV that his sentence was excessive for two reasons. First, he had no criminal history, was a productive tax paying citizen, and cooperated with police in their investigation of his misconduct. Second, he claims that his sentence on Count II for aggravated possession of child pornography was excessive given the trial court's misinterpretation of the statute. Hamilton concedes that the sentences were within the statutory range for the offenses, but he argues that they were disproportionate under the circumstances of his case. Dkt. 1, at 19-20.

The Supreme Court recognizes the longstanding tradition of allowing state legislatures to make and implement policy decisions in sentencing. *See Ewing v. California*, 538 U.S. 11, 25 (2003) ("Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts."). This deference to legislative policy choices "finds a corollary in the principal that the Constitution 'does not mandate adoption of any one penological theory.'" *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 999 (1991)). The Supreme Court holds the Eighth Amendment does not require strict proportionality between crime and sentence. "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing*, 538 U.S. at 23 (quoting *Harmelin*, 501 U.S. at 1001). In interpreting the Supreme Court jurisprudence, the Tenth Circuit has accorded "wide discretion" to state trial courts in sentencing matters, finding generally such challenges are not cognizable on habeas review unless a sentence is imposed "outside the statutory limits" or otherwise "unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000); *see also United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment."). Furthermore, it is a long-standing principle of habeas corpus jurisprudence that relief is not available for errors of state law. *See Estelle*, 502 U.S. at 67 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions.")

Hamilton raises the issue that he should have received a lesser sentence based upon his lack of criminal history and his cooperation with police. The Supreme Court has not determined, outside of capital cases, that a defendant is entitled to "individualized sentencing," or "required mitigation" in sentencing (in which the sentencing court considers the aggravating and mitigating factors in formulating a sentence). The high court has specifically refused to extend that doctrine

19

beyond death penalty cases.  *See Harmelin*, 501 U.S. at 995.  Because Hamilton's sentence was for a term of years, he was not entitled to individual sentencing which would have taken those factors into consideration.  Accordingly, the OCCA's decision is neither contrary to nor an unreasonable application of Supreme Court law.  Hamilton's Ground IV is **DENIED**.

### D.  Ground V:  Hamilton received effective assistance of appellate counsel.

Hamilton claims that his appellate counsel was ineffective to the point of a constitutional violation.  He alleges specifically that appellate counsel did not raise "viable substantive claims" including, ineffective assistance of trial counsel and the prosecution's failure to disclose exculpatory evidence, ultimately denying him his constitutional rights.  Dkt. 1, pp. 21-22. Hamilton properly raised the ineffective assistance of counsel claim for the first time in his application for post-conviction relief and raised the trial court's denial of his claim in his appeal to the OCCA.  Accordingly, Hamilton fully exhausted the claim, and this Court will address it on its merits.

The trial court characterized Hamilton's claim as "his appellate attorney failed to fully investigate the facts of his case and had a predetermination that he was guilty instead of innocent." Dkt. 7-4, p. 8.  In denying his claim, the trial court relied on *Strickland v. Washington*, and found that Hamilton's claims were "merely conclusory, unprovable, or unspecific claims of ineffective assistance of appellate counsel" and "it is not the job of this Court to comb through the record or the law looking for support for Petitioner's claims."  The trial court found further that Hamilton had not presented proof of his assertions, but only "bald allegations against his appellate attorney." Because Hamilton had not presented any proof, the trial court denied his claim.  Dkt. 7-4, pp. 8-9. On appeal, the OCCA affirmed the trial court's denial of Hamilton's ineffective assistance of appellate counsel claim, finding no merit under *Strickland*.  The OCCA held that Hamilton had

failed to demonstrate deficient performance by his appellate counsel and no resulting prejudice. Dkt. 7-6, p. 6.

Ineffective assistance of appellate counsel claims are reviewed under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that proper standard for evaluating claims of ineffective assistance of appellate counsel is that announced in *Strickland*). To succeed on a claim that appellate counsel was unconstitutionally ineffective, a defendant must demonstrate his attorney "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Robbins*, 528 U.S. at 285. In addition to demonstrating appellate counsel's objective failure, a defendant must also show that he was prejudiced by counsel's errors, meaning he must demonstrate that had counsel not erred, he "would have prevailed on appeal." *Id.* at 285-86. *See also Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014). "[A]n ineffective assistance of appellate counsel claim lacks merit if the petitioner argues that appellate counsel should have asserted *meritless* ineffective assistance of trial counsel claims." *Harmon v. Sharp*, 936 F.3d 1044, 1063 (10th Cir. 2019) (citing *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 746-47 (10th Cir. 2016)).

As determined, *supra*, in the context of procedural default, Hamilton's claims that his appellate counsel should have raised the ineffectiveness of trial counsel is meritless. Hamilton urges that his trial counsel was ineffective for failing to prepare for trial by not investigating the facts of the case and the evidence. The Court has reviewed the entire trial transcript and finds Hamilton's trial counsel objectively did not err. He raised appropriate objections, filed pre-trial motions, and effectively cross-examined the state's witnesses. Hamilton also claims that his trial attorney advised him not to testify without a sufficient basis. Again, as discussed in the procedural default analysis section of this order, the trial record belies Hamilton's claim. After the submission

of the State's case, Hamilton's counsel indicated that he would not bring witnesses to testify on behalf of the defendant. The trial court then brought Hamilton to the stand to make a record of his knowing and voluntary waiver of his right to testify.

Hamilton also claims that his appellate counsel should have raised a *Brady* claim because the prosecution did not turn over the images alleged to be child pornography. The OCCA determined that there was no *Brady* violation in the prosecutor's actions. Thus, the Brady claim is also meritless.

Accordingly, Hamilton has failed to demonstrate objective errors made by his appellate counsel. Nor has he demonstrated that had those errors been raised the outcome of his appeal would have been different. The OCCA identified the correct Supreme Court standard of *Strickland v. Washington*, and determined there was no merit to Hamilton's ineffective assistance of appellate counsel claim. Therefore, the OCCA's ruling was neither contrary to or an unreasonable application of controlling Supreme Court precedent. As such, Hamilton's Ground V is DENIED.

## CONCLUSION

In summary, Petitioner has not shown that he is in custody in violation of the Constitution. The Court therefore denies the petition for writ of habeas corpus. Further, because petitioner has not shown that reasonable jurists would debate this Court's assessment of his constitutional claims or its determination that some of his claims are procedurally barred, the Court DENIES a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. 1) is DENIED.

2. A certificate of appealability is DENIED.

3. A separate judgment shall be entered in this matter.

DATED this 3rd day of March 2021.

TERENCE C. KERN
United States District Judge